UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS GREVE and JEFFREY NISSEN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 26 C 626 |
| v. | ) ) | Judge Sara L. Ellis |
| AMERICAN AIRLINES, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiffs Nicholas Greve and Jeffrey Nissen filed this putative class action against their employer, American Airlines, Inc. ("American"), alleging that American failed to properly compensate them for overtime work they performed in violation of the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105/1 *et seq.* American has now filed a motion to dismiss under Rule 12(b)(1), arguing that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, preempts Plaintiffs' claim. Because the Court does not have sufficient information at this stage of the case to determine whether a dispute exists over the meaning of the governing collective bargaining agreements ("CBAs"), the Court denies American's motion to dismiss.

## BACKGROUND

Plaintiffs are both employed by American as full-time flight attendants based at Chicago O'Hare International Airport in Chicago, Illinois. As American flight attendants, Plaintiffs' employment is governed by CBAs negotiated between the Association of Professional Flight Attendants and American. These CBAs include, among other things, provisions detailing Plaintiffs' compensation, scheduling, and hours of service.

Plaintiffs allege that American previously "maintained a uniform corporate policy and practice of paying flight attendants on an hourly basis only for work that is performed during 'actual' flight time, which is defined as the time from the release of the parking brake at the beginning of a flight until the parking brake is engaged at the end of a flight." Doc. 1-1 ¶ 12. While American began paying flight attendants "'boarding pay' at half of their regular pay rate for the time it takes for passengers to board the plane at the beginning of the flight" in 2025, it still allegedly did not compensate flight attendants at all "for a multitude of work tasks they are routinely required to perform outside of the actual flight time and boarding time." *Id.* These unpaid tasks include, for example, "appearing and checking in at the airport at least an hour before a scheduled flight, completing pre-flight documentation, waiting at the gate, pre-flight staff meetings, checking safety equipment and inventory, providing customer service to passengers before departure, assisting passengers in exiting the plane, travel by van or other ground transportation during flight sequence layovers, and traveling through customs and/or security." *Id.* ¶ 14. Plaintiffs allege that this results in them and other flight attendants routinely performing unpaid work "off-the-clock" in excess of forty hours per workweek without overtime compensation. *Id.* ¶ 15.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.*

2

"[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

## ANALYSIS

American Airlines moves to dismiss under Rule 12(b)(1), arguing that the Court lacks jurisdiction because the RLA preempts Plaintiffs' IMWL claim. The RLA governs railroads and airlines and provides for the "prompt and orderly settlement" of labor disputes in these industries. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (citing 45 U.S.C. § 151a); *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) ("Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."). The RLA requires parties to adjudicate their "so-called 'minor disputes'" through arbitration before an adjustment board established by the governing CBA. *Carlson*, 758 F.3d at 831 (citation omitted). Minor disputes grow "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n.*, 491 U.S. 299, 303 (1989) (citation omitted).

The Supreme Court has made clear, however, that the RLA does not preempt "causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256;

3

*see also Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 318 (7th Cir. 1994) (holding that the RLA did not preempt the plaintiff's claims because they involved "rights and obligations that exist[ed] independent of the collective bargaining agreement"). Thus, "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Hawaiian Airlines,* 512 U.S. at 256.

Here, Plaintiffs are undoubtably seeking to enforce rights that exist independent of the CBAs. The complaint makes no mention of the CBAs and instead seeks to enforce the IMWL's substantive requirement that "employers must pay employees 1½ times their regular rate for all hours worked in excess of 40 per workweek." Doc. 1-1 ¶ 41. The damages Plaintiffs seek are those provided by the IMWL, not the CBAs. *Id.* ¶¶ 42, 48. And Plaintiffs seek to enforce *only* those statutory rights; they do not seek to enforce any additional rights provided by the CBAs. For this reason, the Court concludes that Plaintiffs' claim arises from the IMWL, not the CBAs. *See, e.g.*, *Ruffin v. JCG Indus., Inc.*, No. 1:25-CV-07257, 2026 WL 509226, at *7 (N.D. Ill. Feb. 24, 2026) (holding that IMWL claim was not preempted because "Plaintiffs simply assert a statutory right to compensation that applies generally to all individual employees"); *Hirst v. Skywest, Inc.*, No. 15 C 02036, 2016 WL 2986978, at *14 (N.D. Ill. May 24, 2016) ("[T]he plaintiffs' rights under the FLSA and the IMWL are completely independent of the [CBA]."); *Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1087 (N.D. Ill. 2012) ("Plaintiffs do not seek a determination as to the appropriate wage under the CBA, but instead assert only their statutory right to compensation under the IMWL . . . the dispute solely pertains to what Plaintiffs are entitled to under Illinois law."); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633, 2011 WL 5122679, at *1 (N.D. Ill. Oct. 28, 2011) ("The 'heart' of the IMWL claim here is not a 'clause' in the CBAs. . . . Plaintiffs have made clear in their papers and in open court that this

4

lawsuit seeks to vindicate *only* their [IMWL] statutory wage rights, *not* any additional rights provided by the CBAs."); *Chavez v. Don Stoltzner Mason Contractor, Inc.*, No. 10 C 264, 2010 WL 1417029, at *3 (N.D. Ill. Apr. 5, 2010) ("The IMWL guarantees Illinois workers a right to time-and-a-half overtime for every hour worked over forty hours in a single week. Plaintiffs are suing to enforce this statutorily created right. . . . Defendants' assertion that Plaintiffs are in reality seeking to enforce the CBAs is wrong; Plaintiffs' claim arises from the IMWL, not the CBAs.").[1]

Nonetheless, "Plaintiffs' IMWL claim may still be preempted by [the RLA] if its resolution requires interpretation of the CBAs." *Chavez,* 2010 WL 1417029, at *3 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)); *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 757 (7th Cir. 2008) ("[P]reemption . . . under the RLA exists when 'the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms.'" (collecting cases)). Importantly, however, "[g]overning precedent emphasizes that it is the 'interpretation' of a CBA, and not a mere 'reference' to a CBA, that warrants preemption." *Hawkins*, 2011 WL 5122679, at *4 (citing *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001)). "[T]he fact that a collective bargaining agreement might be consulted in resolving a plaintiff's claims is insufficient to trigger RLA preclusion." *Carlson*, 758 F.3d at 833. Moreover, the Seventh Circuit has "identified many scenarios where CBAs may be implicated as part of a state or federal cause of action, but preemption/preclusion of the claim is unnecessary," including: "(1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) if the parties do not dispute the interpretation of the relevant CBA

---

[1] While some of these cases involved preemption under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the Supreme Court has confirmed that the LMRA preemption standard "provides an appropriate framework for addressing pre-emption under the RLA." *Hawaiian Airlines*, 512 U.S. at 263.

provisions; or (3) where reference to the CBA is only necessary for computing damages." *Wis. Cent.*, 539 F.3d at 758. Courts determining whether a state law is preempted must conduct a "case-by-case factual analysis to determine the extent to which a state law claim will require interpretation of a CBA." *Id.* at 760 (citing *In re Bentz*, 253 F.3d at 285).

American argues that resolving Plaintiffs' IMWL claim would require interpreting numerous CBA provisions to determine Plaintiffs' "hours worked" and "regular rate" of pay. *See* Doc. 13 at 10–13. In doing so, American takes the position that "an IMWL overtime claim brought by unionized employees like Plaintiffs cannot be adjudicated without interpreting the CBA to determine how it defines their duties and compensation." Doc. 22 at 2. While American provides multiple cases finding preemption of these claims, *see* Doc. 13 at 8–10, many courts in this district have concluded otherwise, *see, e.g.*, *Ruffin*, 2026 WL 509226, at *6 ("The Court also need not analyze the meaning of provisions the Union bargained over on behalf of all employees because the IDOL already defines '[h]ours worked' . . . . The Court can determine if Plaintiffs worked more than 40 hours in at least one individual workweek without full compensation, without any interpretation of the CBA provisions."); *Hirst*, 2016 WL 2986978, at *14 ("[D]efendants have not established that any interpretation would be necessary to resolve the minimum wage and overtime claims. Resolving the FLSA and IMWL claims would 'require only the purely factual inquiry into' the hours the plaintiffs worked and the amount they were compensated."); *Mitchell*, 842 F. Supp. 2d at 1086–87 ("[T]he only issue is whether or not such activities are compensable as 'hours worked' under the Illinois law. Plaintiffs are correct that this narrow issue is a matter of state law interpretation, not interpretation of the CBA or predecessor CBA."); *Hawkins*, 2011 WL 5122679, at *6 ("[Defendant] argues that to calculate the hours for which Plaintiffs should receive overtime pay, the court must interpret a CBA

6

provision . . . . But the IMWL claims do not turn on that CBA term. The 'hours' Plaintiffs worked for purposes of their IMWL claim is governed by the IMWL.").

Courts in this district therefore appear split on this issue, and the only binding case American cites to support this proposition is *Wisconsin Central*. The Court agrees that this case is instructive, as it addresses the very argument American now makes, but the Court disagrees that it warrants a finding of preemption. In *Wisconsin Central*, an employer filed suit seeking a declaratory judgment that the RLA would preempt any IMWL claims brought by its employees. After the defendants filed a motion for summary judgment, the district court concluded that the RLA preempted the IMWL claim. 539 F.3d at 755. In doing so, the district court reasoned that resolving the claim would require an interpretation of the CBA because "computing overtime under Illinois law requires ascertaining the number of 'hours worked' and the 'regular rate of pay'; figures that could only be calculated by turning to the CBAs, and were not so clear under those agreements that they could be determined through a 'mere glance' without interpretation." 539 F.3d at 758. On appeal, the Seventh Circuit explained:

> At this stage of the proceedings, all that is clear is that the CBAs will have to be consulted to calculate the "hours worked" and "regular rate" of pay under the [IMWL]. While this information was sufficient for the district court to determine that computing these values "requires interpretation and application of various provisions contained in the CBAs," the parties have not yet staked out a position for the record as to what these CBA provisions mean, making it impossible to determine at this stage of the proceedings whether a disagreement will exist that will require an arbitrator, under the terms of the RLA, to engage in this CBA interpretation. . . . Because preemption under the RLA will only occur if the parties dispute the CBAs' terms, and even then, arguably only if the dispute is relevant as to liability as opposed to damages, the record is not sufficiently developed for this Court to engage in the case-by-case factual analysis required by *In re Bentz Metal Prods. Co.*

*Id.* at 760. For this reason, the Seventh Circuit held that the claim was not ripe for adjudication and therefore that "the district court lacked jurisdiction to rule on [the employer's] counts concerning preemption under the RLA." *Id.* at 761.

Although *Wisconsin Central* was a declaratory judgment action and therefore procedurally distinct from this case, at least one court in this district has concluded that the Seventh Circuit's reasoning is "directly applicable" to motions to dismiss IMWL overtime claims in cases filed by employees. *Chavez*, 2010 WL 1417029, at *4. In *Chavez*, the defendants moved to dismiss plaintiffs' IMWL overtime claim, arguing that it "require[d] interpretation of the CBAs because in order to determine if Plaintiffs were paid their statutorily guaranteed time-and-a-half overtime, [the court] would need to first determine the applicable wage rate, as defined in the CBAs, and the amount of hours Plaintiffs worked, discounting for any time excluded from 'work' under the CBAs." No. 10 C 264, 2010 WL 1417029, at *3 (N.D. Ill. Apr. 5, 2010). This was "essentially the same argument that was rejected in *Wisconsin Central*" and, "like the employer in *Wisconsin Central*, Defendants [did] not identify any disagreement with Plaintiffs over the meaning of these provisions." *Id.* at *4. Applying the reasoning of *Wisconsin Central*, the court explained that because "the parties have not yet staked out positions on the meaning of the relevant CBA provisions," it was unable to "determine if a real dispute exists over their meaning." *Id.* The court therefore denied the motion to dismiss as premature. *Id.*

Here, just as in *Wisconsin Central* and *Chavez*, the Court lacks sufficient information to conduct the required "case-by-case factual analysis" to determine whether a real dispute exists over the meaning of the CBAs. *In re Bentz*, 253 F.3d at 285. Although American claims that the parties dispute the meaning of certain provisions of the CBAs, this argument falls flat upon

review of the complaint and the parties' briefings.  In particular, while American argues that the parties "dispute what constitutes work under the CBA[s]" because "Plaintiffs claim their work time includes a series of tasks that American asserts do not constitute work under the CBA[s]," Doc. 13 at 10–11, the complaint takes no position regarding what constitutes work under the CBAs.[2]  To the contrary, Plaintiffs *agree* in their response that the "work Plaintiffs allege is unpaid . . . is excluded from compensable time under the CBA[s]." *Id.*  Given this representation, it does not appear that there is any dispute regarding this issue.  And American's assertion that the parties disagree regarding "how flight attendants are paid (e.g., task-based or hourly)," Doc. 13 at 12–13, is similarly unpersuasive.  Upon review of the CBAs, Plaintiffs' allegation that they are paid "hourly" appears entirely consistent with American's assertion that the CBA sets forth four methodologies for calculating Plaintiffs' pay.  *Compare* Doc. 13-2 at 14 (providing that "a Flight Attendant shall be paid hourly rates as follows for all credited hours"), *with id.* at 94 (providing four methods for calculating minimum guaranteed pay for flight attendants "who fl[y] and complete[] a sequence").  Neither party has "staked out a position for the record as to what these CBA provisions mean" with any level of specificity, *Wis. Cent.*, 539 F.3d at 760, meaning that the Court cannot determine whether and to what extent a dispute exists or is relevant.  Finally, while American also points to "numerous other CBA provisions" that

---

[2] To the extent that American argues that Plaintiffs' position regarding which tasks constitute work *under the IMWL* is necessarily their position regarding what constitutes work under the CBA, the Court disagrees.  The IMWL—not the CBA—defines the meaning of "hours worked" for purposes of Plaintiffs' claim.  *See* 56 Ill. Admin. Code § 210.110 (defining "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer.").  Hours may be compensable under the IMWL even if they are not compensable under the CBA, because "[n]othing that labor and management put in a collective bargaining agreement exempts them from state laws of general application." *Spoerle v. Kraft Foods Glob., Inc.*, 614 F.3d 427, 430 (7th Cir. 2010); *see also Hawkins*, 2011 WL 5122679, at *6 ("This difference between the IMWL and the CBAs is irrelevant here, however, because the CBA[] . . . has no bearing on the calculation of hours worked under the IMWL.  The reason is that an employer cannot invoke a CBA to limit or negate superior wage rights granted employees under generally applicable state laws like the IMWL.").

"will need to be interpreted" to resolve Plaintiffs' claims, it notably does not claim that any dispute exists regarding the meaning of these provisions. The potential need to consult undisputed provisions of the CBAs when resolving the IMWL claim does not warrant a finding of preemption. *Carlson*, 758 F.3d at 833.

Because the Court cannot determine at this stage of the case whether a relevant dispute exists over the meaning of the CBAs, American's arguments regarding preemption are premature. The Court therefore denies the motion to dismiss. *See Chavez*, 2010 WL 1417029, at *4 (denying similar motion to dismiss as premature).

### CONCLUSION

For the foregoing reasons, the Court denies American's motion to dismiss [12].

Dated: May 26, 2026

SARA L. ELLIS
United States District Judge

10